David S. PETRY, Plaintiff,

v.

William F. LAWLER, Individually and
in his official capacity as Prosecutor
of Madison County, Defendant.

No. IP 87–603–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

April 28, 1989.

Michael K. Sutherlin, Indianapolis, Ind., for plaintiff.

Wayne E. Uhl, Deputy Atty. Gen., Indianapolis, Ind., for defendant.

## MEMORANDUM

McKINNEY, District Judge.

## I. BACKGROUND

For the purposes of the instant motion, this court must accept the facts alleged in the complaint as true. *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). Those facts are as follows:

Plaintiff David Petry and his ex-wife, Lori, had acrimonious dealings concerning plaintiff's visitation of their young sons. Lori claimed that plaintiff had sexually abused one of the boys, and she brought an action in state court seeking revocation of plaintiff's visitation privileges. After examining the relevant evidence, the state court ordered Lori to allow plaintiff to visit the children.

Throughout the visitation dispute, defendant William Lawler represented Lori as her private attorney. At the same time, defendant Lawler was the Madison County Prosecutor. Acting as Lori's attorney, defendant informed plaintiff that Lori would not comply with the visitation order. In addition, acting both as Lori's attorney and as prosecutor, defendant instructed Lori to go to the local police department to assist the police in obtaining evidence against plaintiff.

The complaint is somewhat unclear as to the subsequent events. Apparently, plaintiff sought a civil contempt hearing in state court to force Lori to allow him to visit the children. The contempt hearing was scheduled for June 5, 1985. On June 4, defendant, acting as the Madison County Prosecutor, initiated child molesting charges against plaintiff, arranged for plaintiff's arrest, and sought a $75,000 appearance bond. About two weeks later, defendant withdrew from the criminal case, in favor of a special prosecutor.

Plaintiff sues defendant in his individual and official capacities under 42 U.S.C. § 1983, contending that defendant purposefully caused plaintiff to be arrested and charged without probable cause. He seeks compensatory and punitive damages, and asks this court to issue an injunction "prohibiting the Defendant from depriving the Plaintiff of his constitutional rights." Complaint, Prayer for Relief, par. 1. In addition to the section 1983 claim, plaintiff alleges a pendent state law claim of intentional infliction of emotional distress.

Defendant, in his motion to dismiss, maintains that plaintiff lacks standing to seek injunctive relief, and in the alternative argues that injunctive relief is precluded by the abstention principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Further, defendant contends that he is absolutely immune from most of plaintiff's damages claims. Finally, defendant argues that any claims not dismissed for absolute immunity should be dismissed for failure to state a claim.

## II. DISCUSSION

### A. *Official Capacity Claim*

Plaintiff's action against defendant in his official capacity is in actuality an action against the governmental entity which employs defendant. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104, 87 L.Ed.2d 114 (1985). Plaintiff has not specified whether he intended the official capacity action to be against the State of Indiana or against Madison County, but the lack of specification is of little moment, because plaintiff has not properly stated a claim against either entity. First, the State of Indiana is protected from plaintiff's section 1983 damages claim by the sovereign immunity clause of the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). Thus, plaintiff's action is barred to the extent plaintiff seeks to sue the state.

■ Second, although the Eleventh Amendment does not protect Madison County, the county cannot be held liable unless it had an unconstitutional policy which caused plaintiff's damages. *Monell v. New York Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff does not allege the existence of an unconstitutional county policy, or an entrenched county practice, nor does he allege that defendant had the authority to establish such a policy, or that defendant's conduct constituted a *de facto* policy. Absent any of these allegations, plaintiff has failed to state a claim against the county. *See Gray v. County of Dane,* 854 F.2d 179, 182–83 (7th Cir.1988).

## B. *Individual Capacity Claims*
### 1. Damages Claim
#### a. *Absolute immunity*

■ Public officials who are sued for damages in civil rights actions are entitled to varying degrees of protection from liability. Judges, legislators and prosecutors enjoy the broadest form of that protection: absolute immunity from suit. In *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Court explained the rationale for the immunity afforded to prosecutors, writing,

> [t]he public trust of the prosecutor's office would suffer if he [the prosecutor] were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages … Further, if the prosecutor could be made to answer in court each time such a person charged him with wrong-doing, his energy and attention would be diverted from the pressing duty of enforcing criminal law.

*Id.* at 424–25, 96 S.Ct. at 992.

In *Imbler,* the Court acknowledged that the application of absolute immunity results in the protection of prosecutorial conduct and *mis*conduct alike. The Court accepted this result, finding that to remove the immunity for malicious or dishonest conduct would be to disserve the broader public interest in the effective performance of prosecutorial duties. 424 U.S. at 427, 96

S.Ct. at 993. A graphic description of this aspect of absolute immunity appears in *Henry v. Farmer City State Bank,* 808 F.2d 1228 (7th Cir.1986): "immunity shields the prosecutor even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." 808 F.2d at 1238. Under *Imbler* and *Henry,* plaintiff in the instant case cannot recover damages for any conduct, malicious or otherwise, which was within the scope of defendant's prosecutorial duties.

■ "Scope of prosecutorial duties" is a key phrase in the immunity analysis. Actions within that scope are protected by absolute immunity, but actions outside the scope are protected by only qualified immunity. The difference is critical—absolute immunity bars suits before any proof is adduced; qualified immunity shields defendants only upon proof that the challenged conduct was not in violation of clearly established law. *See Mitchell v. Forsyth,* 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985).

Because absolute immunity attaches only to conduct within the scope of the prosecutorial duties, the courts have spent considerable time trying to define that scope. Toward that end, the courts have labelled the immunity due prosecutors as "quasi-judicial", meaning that prosecutors are absolutely immune for conduct which is integral to the judicial process. *See Daniels v. Kieser,* 586 F.2d 64, 68–69 (7th Cir.1978). For example, the prosecutorial advocacy function is so enmeshed in the judicial process that the Supreme Court has held that prosecutors, when initiating and presenting the state's case, are absolutely immune from liability. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1975). Investigative activities, however, are not central to judicial proceedings; accordingly, as a general rule prosecutors are protected by only qualified immunity for their police-like investigative activities. *Auriemma v. Montgomery,* 860 F.2d 273, 277 (7th Cir.1988).

■ Under the "quasi-judicial" measure of the scope of absolute immunity, defendant in the case at bar is absolutely immune from liability for his decision to bring the criminal charges at issue and for his participation in the subsequent prosecution. *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995. Further, defendant is absolutely immune from damages liability for injuries arising out of the act of procuring an arrest warrant, and for injuries stemming from his decision to advocate a particular level of bail. *Lerwill v. Joslin,* 712 F.2d 435, 437–438 (10th Cir.1983).

Plaintiff challenges this application of absolute immunity. He contends that by engaging in an investigation while laboring under a conflict of interest, defendant lost absolute immunity for both his advocacy and his investigative activities. Plaintiff's Brief in Response to Motion to Dismiss, at 7, 15–16. In support of his argument, plaintiff cites *Beard v. Udall,* 648 F.2d 1264 (9th Cir.1981). The *Beard* facts are analogous to those in the instant case, and the *Beard* holding supports plaintiff's position, but, as plaintiff himself points out, the Ninth Circuit reversed *Beard* in *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986). Thus, *Beard* lends support for plaintiff's position only if the reasoning survives the reversal.

In *Beard,* the court found that a prosecutor who files criminal charges to gain an advantage in a private civil representation is acting beyond the scope of his authority and is not entitled to absolute immunity. 648 F.2d at 1271. The court reasoned that a prosecutor with a conflict of interest is in a poor position to act impartially, and that absent impartiality, there should be no absolute immunity. *Id.* In *Ashelman,* however, the court re-examined that reasoning, and found it to be inconsistent with *Imbler* and with other leading cases.

The *Ashelman* court stated that it had erred in *Beard* by considering the prosecutor's motive for the challenged conduct, and found that the *Beard* holding improperly allowed the type of harassment of prosecutors that the *Imbler* decision had

condemned. *Ashelman,* 793 F.2d at 1077–78. The court concluded that unethical conduct by a prosecutor does not remove the shield of absolute immunity. *Id.* at 1078.

The Sixth Circuit adopted the *Ashelman* position in *Grant v. Hollenbach,* 870 F.2d 1135 (6th Cir.1989). In *Grant,* the plaintiff challenged the prosecutor's motive for indicting him on child abuse charges. The court found that the prosecutor was absolutely immune from suit, regardless of his motive in bringing the charges. After *Grant* and *Ashelman,* the *Beard* holding has no persuasive power. Similarly, opinions that relied on *Beard* but that pre-dated *Ashelman* are no longer compelling.[1]

This court recognizes the apparent irony of the *Ashelman* and *Grant* conclusions. Under these two cases, prosecutors are protected by absolute immunity notwithstanding conflicts of interest, yet, conflicts of interest seem inimical to the purpose of the immunity. In *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988), the Court described the purpose of immunity:

> In many contexts, government officials are expected to make decisions that are impartial or imaginative, and that above all are informed by considerations other than the personal interests of the decisionmaker ... When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct.

108 S.Ct. at 542 (emphasis added). As the above quotation indicates, one of the purposes of absolute immunity is to prevent public officials from weighing personal risk when making public decisions. In cases involving conflicts of interest, however, the application of absolute immunity produces an incongruous result—public officials may

---

**1.** For a case that relied on *Beard,* see *Brooks v.* *Fitch,* 534 F.Supp. 129 (D.N.J.1981).

with impunity consider personal gain in making public decisions.

To rectify the apparent incongruity, this court returns to the guidelines of *Imbler* and its progeny. In *Imbler,* the court stressed the use of professional discipline as a deterrent to prosecutorial misconduct. 424 U.S. at 429, 96 S.Ct. at 994. Several courts have applied this concept as a balancing factor in analyzing immunity issues. For example, in *Blanton v. Barrick,* 258 N.W.2d 306 (Iowa 1977), the court examined whether professional discipline was an effective safeguard against prosecutorial conflicts of interest. In *Blanton,* as in the case at bar, the defendant was a part-time prosecutor and a part-time private divorce lawyer. The defendant, acting as prosecutor, initiated criminal "child-stealing" charges against the plaintiff while representing the plaintiff's wife in their divorce action. The plaintiff brought a state tort action against the defendant for filing the charges.

The *Blanton* court began its analysis by citing both the American Bar Association Standards and the Code of Professional Responsibility to demonstrate the serious ethical concerns involved in the situation; the court then reviewed the disciplinary consequences which could flow from the prosecutor's obvious violation of the conflict rules. The court questioned the wisdom of the state's use of part-time prosecutors, and emphasized that "it is axiomatic that a prosecutor should never try a defendant with whom he is embroiled in civil litigation". *Id.* at 311. Nonetheless, the court held that a conflict of interest does not remove the prosecutor's absolute immunity. *Id.* at 311. In explanation, the court wrote that its holding was not intended to give approbation to the prosecutor's conduct, but rather was intended "to underline the important policy that judicial officers shall not operate under the threat of a civil action questioning the motives for the charging decisions." *Id.* at 311–12.

Recently, the Iowa Supreme Court relied on its holding in *Blanton* to hold that a county attorney is absolutely immune from a section 1983 damages action, notwithstanding an allegation of a conflict of interest. *Hike v. Hall,* 427 N.W.2d 158, 160 (Iowa 1988). *Blanton* and *Hike* demonstrate that it is not incongruous to grant absolute immunity to the defendant in the case at bar. As plaintiff states in his brief, defendant is subject to suspension or to disbarment if he did in fact conduct himself in the manner alleged in the complaint; those allegations are so grave that it is this court's duty to report them to the Indiana Disciplinary Commission.[2] This court finds that the likelihood of professional discipline is real enough to deter similar unethical conduct in most situations.

Where professional discipline acts as a curb on prosecutorial misconduct, personal liability acts only as a supplemental deterrent, which, while conferring a benefit upon the wronged individual, also confers a great cost upon the public by disrupting the prosecutor's attention to his public responsibilities. The Supreme Court has decided that when these public and individual interests collide, the interest of the public is paramount. *See Imbler,* 424 U.S. at 427–29, 96 S.Ct. at 993–94. Accordingly, this court rejects plaintiff's contention that the conflict of interest removes defendant's absolute immunity, and finds that defendant is absolutely immune from liability for injuries arising out of his initiation of the criminal charges, his procurement of an arrest warrant, his pursuit of an appearance bond, and his participation in the prosecution.

#### b. Qualified immunity

That defendant is immune from liability for his advocacy activities does not end this court's inquiry, for in addition to challenging the advocacy activities, plaintiff attacks defendant's investigative activities. This court must determine whether, disregarding plaintiff's argument that a conflict of

---

**2.** To fulfil that duty, the court will send copies of the complaint and of this memorandum to the Commission.

interest reduces the immunity protections, the alleged investigative activities are covered by absolute or by qualified immunity.

When a prosecutor engages in a police-like investigation, the prosecutor is entitled to no more than the qualified immunity which covers police officers' investigative activities. *Hampton v. City of Chicago*, 484 F.2d 602, 608–609 (7th Cir.1973) (no absolute immunity for prosecutors involved in planning an illegal police raid). If, however, the investigation is central to the prosecutor's court-related duties, the investigative activities are protected by absolute immunity. *Marx v. Gumbinner*, 855 F.2d 783, 792 (11th Cir.1988) (prosecutor's interview of crime victim is covered by absolute immunity); *see also Grant v. Hollenbach*, 870 F.2d 1135 (6th Cir.1989). The categorization of an investigation as "police-like" versus "court-related" turns on the prosecutor's function at the time of the investigation. *See Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).

Plaintiff in effect asks this court to hold that defendant's investigation is analogous to a police investigation. To draw the analogy, the court examines cases in which prosecutors' activities were held to be police-like and as such protected by only qualified immunity. A sampling of those cases yields the following descriptions of activities for which prosecutors are only qualifiedly immune: an initial investigation to identify perpetrators of crimes (*Gobel v. Maricopa County*, 867 F.2d 1201 (9th Cir. 1989)); supervision and interaction with police officers in acquiring evidence (*Barbera v. Smith*, 836 F.2d 96 (2d Cir.1987)); participation in an illegal investigation (*Rex v. Teeples*, 753 F.2d 840 (10th Cir.1985)); preliminary gathering of evidence (*McSurely v. McClellan*, 697 F.2d 309 (D.C.Cir.1982)); a deliberate leak of information with the intent to damage the plaintiff's political prospects (*Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir.1977)); and the planning of and participation in a raid (*Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir.1973)).

Plaintiff has not provided this court with any facts comparable to the facts presented in the cases listed above. Moreover, plaintiff alleges almost nothing that is material to the functional analysis—he alleges only that defendant engaged in an investigation and that the investigation was not within the scope of his duties. Complaint, pars. 12 and 13. Absent additional allegations which describe the nature and scope of the investigation at issue, this court cannot determine whether defendant was functioning in a quasi-judicial or a police-like capacity during the investigation, and as such cannot determine whether the investigation is covered by absolute or by qualified immunity. Because the facts are insufficient to support the immunity analysis, the court defers a resolution of the investigative immunity issue until such time as plaintiff files an amended complaint which provides information concerning the timing of the alleged investigation, the procedures used, and defendant's direct involvement in those procedures, if any.[3]

### c. Failure to state a claim

For the purpose of reviewing defendant's contention that plaintiff has failed to state a claim, this court assumes that defendant was acting in a police-like capacity and is only qualifiedly immune from damages liability for his investigative activities. To state a viable claim under section 1983, plaintiff must allege that defendant caused a deprivation of plaintiff's rights, privileges, or immunities under the Constitution or the laws of the United States. *Bailey v. Andrews*, 811 F.2d 366, 371 (7th Cir.1987). Plaintiff properly alleges a constitutional deprivation, but the complaint as a whole indicates that the cause of the deprivation was defendant's initiation and prosecution of the criminal charges. The court having

---

**3.** Other courts have recognized that the immunity analysis is difficult or impossible when there are no relevant factual allegations. *See Auriemma v. Montgomery*, 860 F.2d 273, 278 (7th Cir. 1988) (the rule distinguishing "quasi-judicial" from "investigative" activities is more easily stated than applied). When the facts as alleged are insufficient for an immunity analysis, the district court may require that plaintiff provide a more definite statement concerning the investigative conduct at issue. *Marx v. Gumbinner*, 855 F.2d 783, 792 (11th Cir.1988).

found that defendant is absolutely immune from damages liability for injuries arising out of those activities, the issue on the motion to dismiss becomes whether plaintiff has stated a claim for a deprivation of a constitutional right arising out of defendant's investigative activities.

The rules of civil procedure do not require plaintiffs to set out detailed facts in their complaints, however, the allegations in the complaint must at least outline the elements of the cause of action. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985). Here, even drawing all reasonable inferences in plaintiff's favor, the complaint is so splintered by the dismissal of the claims barred by absolute immunity that this court cannot restore it to its original logic. As it now stands, the complaint resembles a jigsaw puzzle with most of the pieces missing.

The puzzle-like character of the complaint distinguishes it from the complaint that was at issue in *Gobel v. Maricopa County,* 867 F.2d 1201 (9th Cir.1989). The plaintiffs in *Gobel* were arrested in a case of mistaken identity, and charged with check fraud. The plaintiffs sued the local prosecutors, claiming that they had been arrested without probable cause as a result of the prosecutors' investigation. The district court dismissed the claims on absolute immunity grounds, but the Ninth Circuit reversed, writing,

> [the plaintiffs] may be able to prove that the initial investigation to determine who wrote the bad checks is a police function that is preliminary to and separate from the subsequent quasi-judicial determination to prosecute. If they also demonstrate that the prosecutors' misconduct during this police-like investigative stage caused their false arrest, [the plaintiffs] will have proved a claim that falls outside the scope of absolute prosecutorial immunity.

*Id.* at 1205.

In *Gobel,* the court did not have to sever any claims which were within the scope of

absolute immunity, so the causation element of the complaint remained intact. Here, in contrast, the causal links were lost with the loss of the claims barred by absolute immunity. This court recognizes that there may yet be a set of facts which would entitle plaintiff to relief, and accordingly grants plaintiff leave to amend his complaint. In the amended complaint, plaintiff should set forth facts which support the required causation element.[4]

### 2. Injunctive Claim

In the complaint, plaintiff framed his claim for injunctive relief broadly, requesting that the court enjoin defendant from violating plaintiff's constitutional rights. In his brief, however, plaintiff narrowed his claim, stating that he is seeking an order "enjoining and prohibiting [defendant] from interferring [sic] or acting directly or indirectly in any way in the criminal prosecution of [plaintiff]." Plaintiff's Brief in Response to Motion to Dismiss, at 9. These two versions of the injunctive claim are worlds apart, particularly in terms of the application of the *Younger* abstention principles. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

This court refuses to speculate as to which version of the injunctive claim plaintiff intends to pursue. In his amended complaint, plaintiff should specify the nature of the relief he seeks.

### III. SUMMARY AND CONCLUSION

This court finds that defendant is absolutely immune from damages liability for injuries arising out of his initiation of criminal charges, his procurement of an arrest warrant, his pursuit of an appearance bond, and his participation in the prosecution. The court stays consideration of defendant's damages liability for injuries arising out of his investigative activities, and further stays consideration of plaintiff's

---

**4.** The court notes that there may be some question as to whether, to state a claim against a prosecutor, the plaintiff must allege that the constitutional deprivation was inflicted independently of the decision to prosecute. *See, e.g., MacRae v. Motto,* 543 F.Supp. 1007, 1010 (S.D. N.Y.1982); *see also Grant,* 870 F.2d at 1138.

claim for injunctive relief, pending receipt of an amended complaint. Plaintiff is given thirty days within which to file the amended complaint.

