# IN THE SUPREME COURT OF IOWA

No. 14–2161

Filed October 23, 2015

**STATE OF IOWA,**

   Plaintiff,

vs.

**IOWA DISTRICT COURT FOR DUBUQUE COUNTY,**

   Defendant.

---

Certiorari to the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

The district court held both the Assistant County Attorney and the entire Dubuque County Attorney's Office were disqualified from prosecuting a case. The State filed a petition for a writ of certiorari. **WRIT SUSTAINED AND CASE REMANDED.**

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, Ralph R. Potter, County Attorney, and Brigit M. Barnes, Assistant County Attorney, for plaintiff.

Sandra P. Trevino of Hammer, Simon & Jensen, P.C., East Dubuque, Illinois, for defendant.

**ZAGER, Justice.**

In this case of first impression, we are asked to decide whether under the facts presented here, the district court was correct in granting the motion for recusal or disqualification of the individual prosecuting attorney and the entire Dubuque County Attorney's Office in its prosecution of the defendant. For the reasons set forth below, we conclude that the district court's decision to disqualify the individual prosecuting attorney constituted an abuse of discretion. Consequently, it was likewise unnecessary to disqualify the entire Dubuque County Attorney's Office. The writ of certiorari is sustained, and the case is remanded to the district court for further proceedings.

## I. Background Facts and Proceedings.

On June 21, 2011, Dubuque police received a report of a woman armed with a knife and threatening suicide. Officer Jason Pace was dispatched to the scene. Upon arrival, Officer Pace was informed that the subject of the report was Koreen Erickson. He was also advised that other residents on the street had disarmed Erickson and she had left the area on foot.

Officer Pace was able to locate Erickson, and he attempted to approach her. Erickson immediately and repeatedly began yelling at him that she wanted to die and she wanted him to shoot her. Erickson then threatened to take Officer Pace's gun. Erickson yelled, "I'm going to take your f**king gun," and then charged Officer Pace and reached for the loaded handgun he was wearing on his right hip. Officer Pace and Officer Chad Leitzen immediately subdued Erickson and took her into custody. After being interviewed by the Department of Correctional Services (DCS), Erickson was released from custody on an unsecured

appearance bond under the pretrial supervision of DCS on the condition she comply with all mental health treatment recommendations.

The trial information was filed on June 24 charging Erickson with disarm(ing) or attempt to disarm a peace officer of a dangerous weapon in violation of Iowa Code sections 708.13(1) and 708.13(2) (2011). Assistant County Attorney Brigit M. Barnes filed the trial information and represented the State of Iowa in Erickson's prosecution.[1]

The State and Erickson ultimately reached a plea agreement in this matter, and plea proceedings were scheduled for August 29, 2012. Erickson was going to plead to the lesser charge of interference with official acts. However, on her written guilty plea, Erickson indicated in her own handwriting that she did not want to give up her trial rights. She also wrote that she was suffering from a mental disability at the time of the offense. The district court continued the plea hearing and requested more information on the factual basis for the plea. A new plea hearing was set for September 19. On September 19, Erickson requested that new counsel be appointed due to a breakdown in communication. The court appointed new counsel and rescheduled the trial for October 1.

Shortly thereafter, Erickson filed a notice of special defenses which raised the defense of insanity. A hearing was conducted on October 29. As a result of that hearing, and pursuant to Iowa Code section 812.3, the court suspended further proceedings in the case and ordered Erickson to undergo a competency evaluation. Upon completion of the competency evaluation, a competency hearing was conducted on October 24, 2013. Following the hearing, the district court determined that Erickson was

---

[1]Erickson waived her right to a speedy trial and also waived her right to be tried within one year. Trial in this matter was continued numerous times.

not competent to stand trial and the proceedings remained suspended indefinitely. A placement hearing was held on March 12, 2014. At the conclusion of the hearing, the district court found that Erickson did not pose any danger to the public peace or safety. Erickson remained free on the unsecured appearance bond, and she was ordered to continue attending counseling and taking her prescribed medication. On May 15, the State filed a motion for a hearing on Erickson's competency status, and a status hearing on Erickson's competency was set for July 30.

On May 30, Erickson attended the bond review hearing for her boyfriend, James Evilsizer. Barnes also represented the State in the case against Evilsizer. After the hearing, the district court denied his requested relief, and Evilsizer was returned to the Dubuque County jail. Later that day, Erickson visited Evilsizer at the jail. The conversation between the two was video recorded. During the recorded conversation, Erickson made multiple disparaging remarks about Barnes. Erickson called Barnes a "c*nt," a "biased c*nt," and "literally Satan."

Erickson also made remarks that could be taken as threats against Barnes. After Evilsizer told Erickson that her horoscope for the day said she was going to have a romantic evening, Erickson responded, "Yeah, with a sniper rifle for the State." Later in the conversation, Erickson told Evilsizer, "I'm on the verge of going and buying a sniper rifle and just shooting this chick in her face." When the two were discussing Erickson seeing Barnes after Evilsizer's bond hearing, Erickson said she had thought, "Really, b*tch? You're lucky we're in court right now and I'm pregnant."

Erickson also told Evilsizer that she was going to "get [Barnes] disbarred" by reporting her to the "judicial disciplinary committee" and that the committee would "rip her apart." In addition to the remarks

about the assistant county attorney, Erickson told Evilsizer that she was "about to snap the f*ck out," that the State was "pushing [her] over the edge," and that she was "borderline suicidal."

After being alerted to the recorded conversation, the State filed a motion to revoke Erickson's bond and to review the status of her competency. In support of its motion, the State referenced Erickson's disparaging statements regarding Barnes and the threat to shoot her with a sniper rifle. The State argued these statements demonstrated that Erickson was a danger to the public. The district court ordered Erickson's bond be revoked and a warrant issued for her arrest. After her arrest, Erickson's bond was set at $25,000, cash only. The district court also ordered an additional competency evaluation.[2]

After a status review hearing on August 1, the district court ordered that Erickson be immediately released from custody upon the execution of a $10,000 unsecured appearance bond. Erickson was ordered to continue with pretrial monitoring and mental health treatment. An additional competency evaluation was performed and a report issued which indicated that Erickson was now competent to stand trial. The district court held a second competency hearing on October 20. Based upon the report, and with Erickson's consent, the district court found that Erickson was competent to stand trial and the court set the matter for trial.

On October 24, Erickson filed a motion for recusal or disqualification of both Barnes individually and the entire Dubuque County Attorney's Office. In support of her motion, Erickson argued

---

[2]It should be noted that no additional criminal charges were ever filed against Erickson as a result of the comments made during her recorded conversation with Evilsizer.

(1) Barnes should be recused because the bond revocation only occurred due to alleged threats made to her personal safety, (2) Barnes should be recused because she may be emotionally involved in Erickson's case in a way that would make it difficult for her to act impartially, and (3) the entire Dubuque County Attorney's Office should be disqualified because Barnes' emotional involvement in the prosecution could create a conflict of interest with other attorneys in the office. At a hearing on the motion to recuse, Erickson's counsel argued that Erickson's bond would not have been revoked if the statements Erickson made had been directed at someone other than a county attorney. Barnes responded that she would have filed a motion to revoke Erickson's bond for being a danger to the community regardless of the person against whom the threat was made.

Following the hearing, the district court granted the motion to recuse. Without ruling specifically on the request to recuse Barnes individually, the district court order stated,

> In light of the alleged threats made personally to Assistant County Attorney Brigit Barnes, the Court hereby deems it inappropriate for the Dubuque County Attorney's Office to continue as regards the conflict this matter presents for unbiased prosecution of the allegations charged herein.

The order also required the Dubuque County Attorney to find someone from an adjoining county to represent the State.

The State filed a petition for writ of certiorari, which we granted.

## II. Standard of Review.

"The question of whether a conflict exists is a mixed question of fact and law." *State v. McKinley*, 860 N.W.2d 874, 878 (Iowa 2015). " 'Whether the facts show an actual conflict of interest or a serious potential for conflict is a matter of trial court discretion . . . .' " *Id.*

(quoting *Pippins v. State*, 661 N.W.2d 544, 548 (Iowa 2003)). "We review these conflict-of-interest determinations for an abuse of discretion." *Id.*; *State v. Smith*, 761 N.W.2d 63, 68 (Iowa 2003). " 'An abuse of discretion occurs when the district court exercises its discretion "on grounds or for reasons clearly untenable or to an extent clearly unreasonable." ' " *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015) (quoting *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001)). " 'A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law.' " *Rodriquez*, 636 N.W.2d at 239 (quoting *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2001)).

**III. Analysis.**

**A. Disqualification of the Individual Assistant County Attorney.** In order to determine whether disqualification of the Dubuque County Attorney's Office was proper, we must first determine whether disqualification of the individual prosecutor was proper. If there are no grounds to disqualify the individual prosecutor, there would be no reason to disqualify the entire Dubuque County Attorney's Office.

> District courts unquestionably have the
>
> authority to disqualify prosecuting attorneys from participating in particular criminal prosecutions based on a determination that they have a conflict of interest which might prejudice them against the accused or otherwise cause them to seek results that are unjust or adverse to the public interest.

Allan L. Schwartz & Danny R. Veilleux, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused*, 42 A.L.R.5th 581, 581 (1996). It is generally recognized that prosecutors should be disqualified "from participating in state criminal prosecutions . . . [when] they [are] victims of the crime being

prosecuted" because they will have improper interests in securing a conviction. *Id.* at 671.

This court has previously recognized that there are circumstances where it would be improper for a county attorney to continue as the prosecutor in a criminal trial. *See Blanton v. Barrick*, 258 N.W.2d 306, 311 (Iowa 1977). Specifically, the court has stated that it would be improper for a county attorney to prosecute a case when the attorney " 'has acquired knowledge of facts on which the prosecution is based' " through personal relations or when the prosecutor is currently an opposing party to the defendant in a civil suit. *Id.* (quoting *State v. Orozco*, 202 N.W.2d 344, 345–46 (Iowa 1972)). However, we have never addressed the specific issue of whether a county attorney should be disqualified based on threats made against him or her.

1. *Approach of other states and the federal courts.* While we have never had the opportunity to address the specific issue presented here, a number of state and federal courts that have considered the issue typically hold that a prosecutor should be disqualified only if there is an actual conflict of interest. *See, e.g., Kindred v. State*, 521 N.E.2d 320, 327 (Ind. 1988); *State v. McManus*, 941 A.2d 222, 231–32 (R.I. 2008). For example, the Rhode Island Supreme Court has held that "an actual conflict would exist if the prosecutor is a necessary witness in the case against the defendant." *McManus*, 941 A.2d at 232.

Many courts have specifically observed that threats on the life of a prosecutor from a criminal defendant will not cause a disqualifying interest in the prosecution of a different offense. *See, e.g., State v. Robinson*, 179 P.3d 1254, 1260 (N.M. Ct. App. 2008) ("We agree with these cases that, as a matter of policy, a defendant does not create a

disqualifying interest and cannot choose his or her prosecutor for an underlying offense by the use of threats.").

In *McManus,* while a defendant was in jail awaiting trial for first-degree murder, he was charged with soliciting the murder of the state prosecutor and attorney general. 941 A.2d at 228. The defendant argued that the prosecutor whose murder he had allegedly solicited should be disqualified from prosecuting his first-degree murder trial because of a personal interest in seeing him convicted. *Id.* at 231. The Rhode Island Supreme Court found that the disqualification of the prosecutor was not necessary in this situation. *Id.* It held that when a defendant allegedly threatens the life of a prosecutor, requiring that prosecutor's disqualification would "provide an incentive for defendants to engage in such unlawful conduct." *Id.* at 232. The court concluded it did not want to "sanction such a strategy in the courts of [the] state." *Id.*

The Indiana Supreme Court was presented with a similar case in which a defendant allegedly threatened the prosecutor's life and initiated a lawsuit in federal court against the prosecutor for malicious prosecution. *Kindred,* 521 N.E.2d at 327. The court was not persuaded that either the alleged threat against the prosecutor or the lawsuit were sufficient conflicts of interest to justify disqualifying the prosecutor and appointing a special prosecutor. *Id.* It held that allowing prosecutors "to be disqualified merely upon the unilateral action of defendants . . . would lead to absurd consequences." *Id.*

The Nebraska Supreme Court adopted a bright-line rule in this context. The court acknowledged that a prosecuting attorney who has a personal interest in the case against the defendant may be disqualified. *See State v. Boyce,* 233 N.W.2d 912, 913 (Neb. 1975). If a prosecutor is the actual victim of the alleged crime, or their property is the subject of

it, courts generally would conclude the prosecutor is disqualified from continuing to prosecute the case. *Id.* The foundation for this rule is that "where the [prosecutor] is, in effect, an injured party, he [or she] has a personal interest in securing a conviction and therefore can no longer be disinterested and impartial in seeking equal justice in the public interest only." *Id*; *accord Millsap v. Super. Ct.*, 82 Cal. Rptr. 2d 733, 738 (Ct. App. 1999) (concluding that there was a "real potential for actual prejudice" if the prosecutors who were the targets of the defendant's alleged murder solicitation were allowed to prosecute the solicitation case); *State v. Hottle*, 476 S.E.2d 200, 212 (W. Va. 1996) (requiring the disqualification of a prosecutor when the prosecuting attorney or his or her family are among the intended victims).

In addition to the state courts that have addressed the issue, many federal courts have also held that threats made against a prosecutor are not sufficient to constitute a disqualifying conflict of interest. In a seminal case, the court in *Resnover v. Pearson* rejected the defendant's argument that alleged threats made to the prosecutor required recusal. 754 F. Supp. 1374, 1388–89 (N.D. Ind. 1991). The court in *Resnover* noted that criminal defendants often threaten the lives of judges, prosecutors, and public defenders. *Id.* at 1389. It stated,

> The law is clear that a party, including the defendant in a criminal case, cannot drive a state court judge off the bench in a case by threatening him or her. It is likewise true that a criminal defendant cannot cause the recusal of his prosecutor by threatening the prosecutor or having him threatened.

*Id.* at 1388–89.

2. *Iowa Rules of Professional Conduct.* The Iowa Rules of Professional Conduct provide special rules pertaining to conflicts of interest for former and current government employees. Iowa R. Prof'l

Conduct 32:1.11. Rule 32:1.11 provides that a lawyer working as a public officer or employee shall not "participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent." *Id.* r. 32:1.11(d)(2)(i). It also provides that a prosecutor shall not engage in defense work while employed as a prosecutor. *Id.* r. 32:1.11(f). The comments to rule 32:1.11 note that the conflict of interest rule for government employees is aimed at eliminating the risk that benefits to an outside or former client would "affect the performance of the lawyer's professional functions on behalf of the government." *Id.* r. 32:1.11 cmt. 4. Nothing in this rule would preclude Barnes from continuing to represent the State because it does not contemplate that alleged threats are sufficient to constitute a conflict of interest.

Rule 32:3.8 addresses the special responsibilities of prosecutors. *Id.* r. 32:3.8. This rule mainly addresses the duties of a prosecutor in regard to prosecuting reputable claims, timely disclosing evidence, and refraining from making certain public statements. *Id.* However, the comments to the rule expand on the ethical responsibilities of a prosecutor. The comments state that

> [a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence.

*Id.* r. 32:1.11 cmt. 1. We consider whether Erickson was "accorded procedural justice." *Id.* Following the disclosure of the recorded statements made by Erickson to Evilsizer, the State filed a motion to revoke Erickson's bond. The district court revoked Erickson's previous

bond and established a new, higher bond. However, three days later, the district court conducted a further hearing for the purpose of reviewing Erickson's bond and discussing her placement pending a competency evaluation. A status review hearing was conducted on August 1, after which Erickson was released from custody on an unsecured appearance bond. At the later disqualification hearing, Barnes stated that she would have filed the same motion to revoke bond regardless of the person against whom the alleged threats were made. Erickson was provided procedural justice.

We also consider whether her "guilt is decided upon the basis of sufficient evidence." *Id.* Erickson's guilt or innocence on the underlying charges must be decided upon the basis of the evidence against her and not upon any evidence contained in the content of the videotaped conversation. We find nothing in the record to suggest that Barnes would prosecute the underlying charge utilizing any evidence other than that contained within the trial information and minutes of testimony. Nothing contained within the Iowa Rules of Professional Conduct expressly addresses a prosecutor's potential conflict of interest with defendants in criminal cases. Clearly, there is nothing which would lead us to conclude that Barnes had a conflict of interest in this case requiring recusal.

3. *ABA standards of prosecutorial conduct.* The American Bar Association publishes standards for prosecutors and public defenders. ABA Standards for Criminal Justice: Prosecution Function and Defense Function (3d ed.1993). Although these standards are "not intended to be used as criteria for . . . judicial evaluation," the standards still "may or may not be relevant in such judicial evaluation, depending upon all the circumstances." *Id.* 3-1.1, at 3. Standard 3-1.3 addresses prosecutorial

conflicts of interest. *Id.* 3-1.3, at 7–8. The section most relevant to this case provides that "[a] prosecutor should not permit his or her professional judgment or obligations to be affected by his or her own political, financial, business, property, or personal interests." *Id.* 3-1.3(f), at 7. The commentary expands on what constitutes outside interests and influences. *Id.* at 9–12. Prosecutors should not proceed with cases because of personal, ideological, or political beliefs. *Id.* at 9. They should not undertake unnecessary investigation to make new law or be identified with a "landmark case." *Id.* We cannot conclude that the statements and threats made by Erickson created a conflict of interest for Barnes. In an adversarial system, it is expected that a criminal defendant may hold negative views of the prosecutor. A defendant's negative comments and threats alone are not sufficient to create a disqualifying personal interest for a prosecutor. *See id.* 3-1.3(f), at 7. Erickson offered no evidence to show that Barnes decided to move for revocation of her bond because of "personal, ideological, or political beliefs." Nothing in the record before us supports a conclusion there was a conflict of interest which would require recusal.

**B. Whether the District Court Properly Exercised Its Discretion.** In our review of the district court's decision, we can decide whether the facts available to the court at the time of the hearing supported its discretionary decision to disqualify Barnes. *See State v. Vanover*, 559 N.W.2d 618, 627 (Iowa 1997). If a district court does not include in its order the exact language explaining why there is an actual conflict or a serious potential for conflict, it does not automatically mean the court abused its discretion. *Id.* However,

> trial judges should explain their discretionary decisions on the record. It would aid our review if they would make detailed findings of fact and state why the facts show an

actual conflict of interest or a serious potential for conflict of interest.

*Id.*

Here, the district court did not adequately explain its reasoning for concluding that Barnes had an actual conflict of interest or a serious potential for a conflict of interest. The district court provided no authority to support its decision to disqualify Barnes. The district court order also did not clarify under which standard Barnes was disqualified—actual conflict or serious potential for conflict. Rather, the district court only vaguely mentioned that her continued participation would be "inappropriate" under an "unbiased prosecution" standard. The district court also did not make any detailed findings on why Barnes should be disqualified. The court mentions the alleged threats but does not determine whether these threats would impact either Barnes or any other member of the Dubuque County Attorney's Office in their prosecution of Erickson. At the hearing on the disqualification motion, Erickson asserted that Barnes only moved to revoke her bond because the threats were made against her personally; however, Barnes responded that she would have taken the same action if the threat had been made against any other person. The record before us clearly does not support any claim of prejudice or bias which would constitute a conflict of interest. We agree with the reasoning of other courts that have addressed the issue that threats alone are not sufficient to support a conflict of interest for a prosecutor which would require disqualification or recusal. This approach is consistent with our decisions in *Orozco* and *Blanton.* That is to say, when a threat to a prosecutor does not form the basis for a separate criminal prosecution, and when the prosecutor is not the victim, the prosecutor does not have a disqualifying conflict of

interest in the underlying prosecution. For these reasons, we find that the district court abused its discretion in disqualifying Barnes from prosecuting Erickson in the underlying criminal case.

**C. Imputation of Disqualification to Entire Dubuque County Attorney's Office.** The Dubuque County Attorney's Office cannot be disqualified by the imputation of a conflict of interest if no conflict exists. Because we find that the district court abused its discretion in holding that Barnes was disqualified from prosecuting Erickson, there was no basis to disqualify the entire Dubuque County Attorney's Office.

**IV. Conclusion.**

The district court abused its discretion when it disqualified Assistant County Attorney Brigit Barnes from her continued prosecution of Erickson on the underlying criminal offense. The district court's decision is untenable because it is not supported by substantial evidence and is based on an erroneous application of the law. We reverse the disqualification order and remand for further proceedings.

**WRIT SUSTAINED AND CASE REMANDED.**