# IN THE SUPREME COURT OF IOWA

No. 18–1534

Filed February 14, 2020

**IN RE 2018 GRAND JURY OF DALLAS COUNTY**

**JOHN DOE,**

Appellant.

---

Appeal from the Iowa District Court for Dallas County, Dustria Relph, Judge.

On interlocutory appeal, John Doe challenges several district court rulings in a grand jury proceeding regarding the ability of the State to subpoena a criminal defense expert and whether such contact merits recusal, the authority of the district court to quash a grand jury proceeding, and when fair-cross-section challenges to the grand jury panel must be raised. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Alfredo Parrish and Tammy Westhoff Gentry of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Zachary Miller and Denise Timmins, Assistant Attorneys General, and Matthew Schultz, County Attorney, for appellee.

**APPEL, Justice.**

In this case, a prosecutor contacted an expert witness retained by a defendant facing the prospect of criminal charges, asking the expert her opinions about the matter. The expert declined to confirm whether she had been retained or to otherwise substantively respond, despite the prosecution advising her that she would be subpoenaed to appear before a grand jury investigating the potential crime.

The defendant claims that the State may not lawfully subpoena a retained expert; that the prosecution's contact with the expert was improper and requires disqualification of the State's counsel; and that as a result of the improper actions of the State, the grand jury proceeding should be quashed. Additionally, the defendant questions the application of *State v. Plain* challenges to a grand jury proceeding. *See* 898 N.W.2d 801 (Iowa 2017).

For the reasons expressed below, we conclude that the State cannot subpoena an expert retained by the defense to testify before the grand jury regarding her opinions on the criminal matter being investigated. While we conclude that the ex parte contact was improper, we do not believe it is a basis to disqualify counsel. Finally, although we afford the defendant with some relief, we find no basis to quash the grand jury proceeding. We also address procedural matters regarding the proper development of claims under *Plain* as they relate to grand jury proceedings.

## I. Factual and Procedural Background.

**A. Initial Criminal Proceedings.** John Doe is the father of S.C., a child. In November of 2017, law enforcement received information from the Iowa Department of Human Services that S.C. had possibly been physically abused. A detective investigated the matter by going to S.C.'s daycare center. There, the detective saw multiple bruises on S.C.'s back.

The detective took photographs of the child's back and interviewed Doe about the bruises. Following the interview, a criminal complaint was filed against Doe alleging child endangerment causing bodily injury, which is a class "D" felony.

Shortly after the complaint was filed, a county prosecutor was specially assigned to the case. Doe retained legal counsel, pled not guilty, waived speedy trial, and filed a motion for discovery. The district court granted the discovery motion and ordered reciprocal discovery.

**B. Plea Discussions Between the Parties.** The State and Doe entered plea discussions. A fighting issue was whether the State could prove its case of physical abuse based on photographs. Doe argued that the photos indicated a skin condition, while the State took the position that the bruising was consistent with physical abuse. While the parties were engaged in plea discussions, the State continued its investigation by gathering medical records pursuant to a subpoena duces tecum.

The special prosecutor obtained assistance in the matter from Assistant Attorney General Denise Timmins. In the course of plea discussions, Doe's attorney, Alfredo Parrish, disclosed that Dr. Linda Railsback had been retained by the defense in connection with the case.

**C. Legal Issues Surrounding Decision to Convene a Grand Jury.**

1. *State's communications with Doe's retained expert.* Following Parrish's disclosure regarding Dr. Railsback, on August 29, 2018, Timmins contacted Railsback by telephone without notice to or permission from Doe's counsel. Timmins asked Railsback if she had been working on the case and further asked Railsback whether she had come to an ultimate opinion about S.C.'s injuries. Railsback declined to discuss the matter with Timmins. Despite Timmins informing Railsback that she would be subpoenaed to appear before the grand jury should she not answer

Timmins's questions, Railsback continued to decline to discuss the matter with Timmins. Two days later, Railsback was served with a subpoena.

Parrish learned of the conversation and subpoena of Railsback and further discovered that other witnesses had been subpoenaed to appear before the grand jury who were also John Doe's witnesses in a related child-in-need-of-assistance case.

2. *Hearing on defense motions before the district court.* In early September, Doe filed motions with the district court to quash the subpoena of Dr. Railsback and to disqualify attorney Timmins from the proceeding due to her ex parte contact with Railsback. Doe also sought to either quash the grand jury proceedings in their entirety or continue the proceedings to explore a challenge under *Plain*, 898 N.W.2d 801.

The district court held a hearing on the motions. Associates of Parrish attended the hearing and advanced arguments on behalf of Doe. According to Doe, the State was using the grand jury proceedings primarily as a discovery tactic. Doe argued that when a grand jury is convened, the State can only call witnesses who the prosecutor believes will present the best information for the State. Doe cited article I, section 11 of the Iowa Constitution, which generally provides for presentment or indictment by a grand jury. Because the State was using the grand jury for an improper purpose, Doe asserted that the grand jury proceeding should be quashed.

Alternatively, Doe sought a continuance to ensure a fair-cross-section in the grand jury venire. Doe argued that the *Plain* decision extends to grand jury composition under article I, sections 10 and 11 of the Iowa Constitution and that such a challenge should be mounted before the grand jury is sworn under Iowa Rule of Criminal Procedure 2.3(2).

Next, Doe addressed the motion to quash the subpoena served on Railsback. Doe argued that the subpoena of a retained expert violated the

work-product protection, could go into attorney–client privilege, and subverted the grand jury process. Further, Doe asserted the information regarding Railsback was provided as part of a confidential plea-bargaining process. Doe argued it would delve too far into the defendant's own investigation of their defense to allow Railsback's testimony before the grand jury. Finally, Doe urged that the district court disqualify Timmins and the attorney general's office from further participation in the case because of its improper use of the grand jury as a discovery device.

On behalf of the State, Timmins made a professional statement. She recounted discussions with Doe's counsel regarding the grand jury. Timmins declared that counsel for Doe had told her numerous times that Railsback "is going to say that the child has a skin condition." Timmins stated she called Railsback and asked whether her understanding of Railsback's opinion was correct. After Railsback declined to provide any information, Timmins advised Railsback that she would receive a subpoena. Timmins denied, however, that she threatened Railsback in any way. Timmins declared the State was having a difficult time deciding what to do with the case and decided to empanel a grand jury and let it decide whether to proceed with criminal charges.

Assistant Attorney General Zachary Miller then presented to the district court the outline of the State's arguments. Through Miller, the State advised the court that they were not interested in unauthorized discovery but instead wanted to present the grand jury with all the available evidence. Although the rules do not require the State to present any of the defendant's evidence, they asserted that caselaw arguably does impose such a requirement. In any event, the State argued that its desire to present defendant's potentially exculpatory evidence is sound policy.

On the issue of staying selection of the grand jury pending development of a *Plain* challenge, the State noted that Doe had not lodged a *Plain* challenge but merely requested a continuance until the information to lodge a *Plain* challenge could be received from the court and evaluated. On that basis, the State contends, the district court's deferral of consideration of the merits pending later development of the record was proper.

Turning to the issue of the subpoena to Railsback, the State asserted that even if there was some privileged information, the witness could assert privilege before the grand jury. The State claimed it was not engaged in a fishing expedition to learn about the defendant's case but only sought to present the grand jury with a full array of evidence. Further, the State noted that the parties had agreed to reciprocal discovery, and as a result, there would be no harm in presenting evidence from Railsback to the grand jury.

On the issue of disqualification, the State maintained that Timmins did not cross any ethical line. According to the State, Timmins was simply trying to prepare for the grand jury and was attempting to bring pertinent information before it to allow the grand jury to make a decision.

Madison County Attorney Matthew Schultz also appeared for the State. Schultz advised the court that the State would ask the grand jury to use the beyond-a-reasonable-doubt standard in lieu of the more typical probable-cause standard when considering whether to bring an indictment.

After the parties had presented their positions, the attorneys explored exactly what Doe's primary counsel, Parrish, had told the State about Railsback's potential testimony. Schultz made a professional statement that Parrish had stated that Railsback had reviewed the

photographs of S.C. and had concluded that they reflected a skin condition. Associates of Parrish who were arguing the motion stated they were not familiar with the discussions but asserted the discussions were confidential. Timmins responded that there was nothing about the conversations suggesting the information revealed by Parrish could not be used by the State. Doe's attorneys asserted that they themselves "specifically have not said to [Dr. Railsback] that she was going to be a trial witness. She was retained to help the defense in understanding the case."

3. *Ruling of the district court.* Immediately following the argument, the district court initially denied Doe's motion to quash the grand jury, reasoning that the court lacked authority to do so. The district court also denied a continuance of the proceeding to allow a *Plain* challenge to the make-up of the grand jury, reasoning that such a challenge could be considered after the grand jury was sworn and if an indictment was returned.

The district court took the question of the subpoena of Dr. Railsback under advisement but later denied the motion in a written ruling. The district court concluded that although Railsback should not be allowed to testify regarding trial strategy, she could testify about opinions that Doe's counsel had disclosed to the State under a waiver theory.

Following the rulings, a grand jury was selected and sworn. On September 11, however, this court granted Doe's application for interlocutory appeal and stayed the grand jury proceedings.

**II.  Standard of Review.**

Ordinarily, we review a district court decision with respect to quashing of a subpoena for abuse of discretion. *Morris v. Morris*, 383 N.W.2d 527, 529 (Iowa 1986) ("The trial court sustained the motion to

quash, a ruling which defendants challenge. A trial court has wide discretion in such a ruling. We find no abuse." (Citation omitted.)). Similarly, this court reviews a district court's decision not to disqualify a prosecutor for abuse of discretion. *State v. Iowa Dist. Ct. for Dubuque Cty.*, 870 N.W.2d 849, 850, 853 (Iowa 2015). The district court's interpretation of statutory language is reviewed for errors of law. *State v. Dahl*, 874 N.W.2d 348, 351 (Iowa 2016). The standard of review for district court determinations regarding authority and jurisdiction of a district court are also reviewed for correction of errors at law. *State v. Clark*, 608 N.W.2d 5, 7 (Iowa 2000) (en banc).

**III. Discussion.**

**A. Validity of State's Subpoena of Expert Retained by Defense in a Criminal Proceeding to Appear and Testify Before a Grand Jury.**

1. *Introduction.* The first issue in this appeal is whether the State may subpoena an expert witness retained by the defense in preparation for criminal prosecution to testify before a grand jury proceeding. The parties have not cited, nor have we found, authoritative Iowa precedent on the issue. An overview of the nature of the grand jury will provide context for deciding the issue.

In *State v. Iowa District Court for Johnson County*, 568 N.W.2d 505 (Iowa 1997), we discussed the nature of grand juries under Iowa law. In doing so, we quoted federal precedent:

> In fact the whole theory of [the grand jury's] function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the judicial branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office.

*Id.* at 508 (alteration in original) (quoting *United States v. Williams*, 504 U.S. 36, 47, 112 S. Ct. 1735, 1742 (1992)).

We have also cited with approval the discussion of the federal grand jury in *United States v. Calandra*, 414 U.S. 338, 94 S. Ct. 613 (1974). *See State v. Hall*, 235 N.W.2d 702, 712–13 (Iowa 1975) (en banc). In *Calandra*, the United States Supreme Court stated,

> Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law. No judge presides to monitor its proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime."

414 U.S. at 343, 94 S. Ct. at 617 (quoting *Blair v. United States*, 250 U.S. 273, 282, 39 S. Ct. 468, 471 (1919)).

Further, the *Calandra* Court noted,

> The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence.

*Id.* at 344–45, 97 S. Ct. at 618.

Yet, the cases make clear that the subpoena power of the grand jury is not unlimited. *Id.* at 346, 94 S. Ct. at 619. Grand jury subpoenas cannot violate a valid privilege, whether established by constitution, statute, or common law. *Id.* There is also some authority for the proposition that grand jury subpoenas may not be unreasonable or

oppressive. *See In re Grand Jury Subpoena*, 626 F. Supp. 1057, 1061 (D.P.R. 1986) (finding a grand jury subpoena requiring production of "any and all records" of a party was overbroad), *aff'd in part, rev'd in part sub nom. In re Grand Jury Proceedings*, 814 F.2d 61, 73 (1st Cir. 1987); *State v. Hill*, 37 N.E.3d 822, 827 (Ohio Ct. App. 2015) (finding that the district court has the power to review grand jury subpoena for fundamental unfairness), *aff'd sub nom. In re Cases Held for the Decision in State v. Thomas*, 78 N.E.3d 830 (Ohio 2016) (mem.).

Based on these authorities, the question is whether this court should quash the grand jury subpoena of Doe's retained expert.

2. *Positions of the parties.* Doe advances several arguments to support quashing the grand jury subpoena served on Dr. Railsback. First, Doe asserts the only information she has is privileged and shielded by work-product protection. Doe cites *In re Grand Jury Proceedings*, 473 F.2d 840, 846–47 (8th Cir. 1973), for the proposition that statements made by witnesses to an attorney have been consistently held to be work product. According to Doe, any effort to obtain such information in the manner and circumstances of this case is "unheard of."

Second, Doe asserts that discovery of an expert witness not expected to testify and specially retained in anticipation of litigation may only be obtained upon a showing of exceptional circumstances under Iowa Rule of Civil Procedure 1.508(2). Doe impliedly argues that the Iowa Rules of Civil Procedure apply in a case involving a grand jury subpoena.

Third, Doe claims the decision to subpoena Railsback without first informing the district court or opposing counsel was contrary to the Iowa Rules of Evidence. Doe argues that rules on privileges apply "to all stages of a case or proceeding." Iowa R. of Evid. 5.1101(*b*). Further, rule 5.104 provides that the court must decide any preliminary question about

whether a privilege exists. Under the circumstances, Doe asserts that the State was required to alert the district court in advance that it intended to call Railsback. In support of this assertion, Doe cites *State v. Wong*, 40 P.3d 914 (Haw. 2002). There, the Hawai'i Supreme Court held that the prosecutor engaged in misconduct by presenting the testimony of the defendant's tax attorney to a grand jury without first seeking judicial review on the attorney–client privilege. *Id.* at 922–23.

Fourth, Doe argues that the State learned of Railsback's identity through plea negotiations and that such disclosures are confidential. Doe argues that lawyers have a duty not to disclose those communications under Iowa Rule of Professional Conduct 32:1.6. Further, Doe points out that statements made in plea negotiations are inadmissible. *See* Iowa R. Crim. P. 2.10(5). Doe asserts that allowing use of information about an expert witness obtained in plea negotiations bargaining will have a chilling effect on plea bargaining. Finally, Doe asserts that if the State desired to present exculpatory evidence by obtaining Railsback's testimony, the State would have called Doe's counsel before serving a subpoena on Railsback.

The State contends that it served the subpoena on Railsback to present the grand jury with exculpatory evidence to assist the grand jury in its deliberations. In support of this argument, the State cites *Hall*, 235 N.W.2d 702. In *Hall*, we declared that a prosecutor's duty in a grand jury proceeding is "to fairly and dispassionately present not only that evidence which tends to prove guilt but also that which is exculpatory in nature." *Id.* at 712. The State further cites the ABA's Criminal Justice Standards for the Prosecution Function (ABA Standards) 3-4.6(e), which provides that a prosecutor with personal knowledge of evidence which "directly negates the guilt of a subject of the investigation" should present or otherwise disclose the evidence to the grand jury. *Criminal Justice Standards for the*

*Prosecution Function*, Am. Bar Ass'n (last updated 4th ed. 2017), https://www.americanbar.org/groups/criminal_justice/standards/Prose cutionFunctionFourthEdition/ [https://perma.cc/ZMJ9-GX38]. The State points out that the United States Department of Justice in its *Justice Manual* 9–11.233 adheres to essentially the same position. *Justice Manual*, U.S. Dep't of Justice (last visited Feb. 5, 2020), https:// www.justice.gov/jm/jm-9-11000-grand-jury [https://perma.cc/6TF7-CA5R].

The notion that a prosecutor should disclose exculpatory information is consistent with Iowa Rule of Criminal Procedure 2.3(4)(*g*), which allows a grand jury to "hear evidence for the defendant." While Doe recognizes that under *Williams*, 504 U.S. at 55, 112 S. Ct. at 1746, there may be no *duty* to disclose exculpatory evidence, that does not mean it is not prudent for the prosecution to do so.

In response to Doe's argument that any potential testimony by Railsback would invade work-product protection, the State responds that the Iowa Rules of Civil Procedure do not apply in criminal matters but are merely instructive. *See State v. Russell*, 897 N.W.2d 717, 725 (Iowa 2017) (stating that "[w]hile our rules of civil procedure do not apply to criminal matters, they can still be instructive"). Thus, the State rejects the claim that it seeks to invade the thoughts of a retained but nontestifying expert in violation of rule 1.508(2) because the rule is not applicable. The State notes that the discovery rules in the Iowa Rules of Criminal Procedure do have expert discovery provisions, though they do not apply until charges are filed. *See* Iowa R. Crim. P. 2.14(2)(*b*)(1)–(2), .14(3)(*b*).

The State further claims that Doe waived any privilege when Parrish told the prosecutors the general content of Dr. Railsback's opinion. The State offers several authorities supporting the contention that

communicating privileged work product to an adversary waives the privilege. *See, e.g.*, *Doe No. 1 v. United States*, 749 F.3d 999, 1008 (11th Cir. 2014) ("Even if it shared the common goal of reaching a quick settlement, the United States was undoubtedly adverse to Epstein during its investigation of him for federal offenses, and the intervenors' disclosure of their work product waived any claim of privilege."); *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) ("We have stated that disclosure to an adversary waives work product protection as to items actually disclosed.").

Responding to Doe's argument that Doe communicated information regarding Railsback's opinion during plea negotiation and that such information may not be used by the prosecution, the State argues that adoption of this proposition would allow defendants to "inoculate themselves from harmful evidence" by disclosing it in plea negotiations. According to the State, the plea discussions themselves cannot be admitted into evidence. *See* Iowa R. Evid. 5.410(*a*)(4).

With respect to Doe's claimed entitlement to a hearing before the district court on the privilege issue, the State claims that Doe misreads Iowa Rule of Evidence 5.104(*a*) relating to the district court's authority to determine privilege claims. The State argues, however, that the notion of providing notice and a hearing to resolve privilege questions would undermine the secrecy of grand jury proceedings established in Iowa Rule of Criminal Procedure 2.3(4)(*d*) ("Every member of the grand jury, and its clerks, bailiffs, and court attendants, shall keep secret the proceedings of that body and the testimony given before it . . . .").

In any event, the State points out that Doe received a hearing before the district court when it denied the motion to quash. The State notes that the district court ordered the State not to seek Doe's trial strategy when examining Dr. Railsback. When appearing before the grand jury,

the State contends, Railsback can claim privilege when testifying and the district court will then decide the claim.

3. *Discussion.* Doe asserts that both the work-product protection and attorney–client privilege require that the subpoena be quashed in this case. At the outset, as a general matter, we find it clear that the privileges themselves do apply in grand jury proceedings. It is, perhaps, not entirely clear that grand jury deliberations are a "case or proceeding" under the Iowa Rule of Criminal Procedure 5.1101(*b*). As a result, there may be some doubt as to whether the protection of privileges afforded under the rule applies. But even if the privilege protection in rule 5.1101(*b*) is not directly applicable to grand jury proceedings, we would hold that these firmly established common law doctrines of work-product protection and attorney–client privilege apply to grand jury proceedings. The State does not argue to the contrary.

We now turn briefly to the scope of the privileges. Attorney–client privilege is vaguely defined in Iowa Rule of Evidence 5.502(*g*)(1) as "the protection that applicable law provides for confidential attorney–client communications." But Doe does not clearly articulate how attorney–client privilege is implicated here.

Iowa Rule of Evidence 5.502(*g*)(2) defines work-product protection as "the protection that applicable law provides for tangible material (*or its intangible equivalent*) prepared in anticipation of litigation or for trial." (Emphasis added.) While Dr. Railsback had not yet prepared tangible work-product for Doe, the rule would protect an intangible equivalent, such as the tentative conclusions or observations that Railsback had shared with Doe's counsel. To the extent the State claims that Railsback may have exculpatory information, much if not all of it would be shielded by work-product protection.

In addition, we take instruction from the Iowa Rule of Civil Procedure 1.508(2) related to discovery of expert witnesses. Ordinarily, in a circumstance like this, a retained nontestifying expert is not subject to discovery unless the State has demonstrated exceptional circumstances, a necessary prerequisite showing to permit testimony from the defense's retained but nontestifying expert. We do not think a grand jury subpoena may be used to circumvent this generally applicable rule and the policies that support it. We therefore conclude that, absent waiver, the district court should have quashed the grand jury subpoena of Dr. Railsback.

The State contends that if work-product protection attached in this case that it had certainly been waived by Doe's counsel. The fighting issue here is the scope of Iowa Rule of Evidence 5.410(*a*)(4). This provision makes inadmissible "[a] statement made during plea discussions with an attorney for the prosecuting authority if the discussions do not result in a guilty plea or they resulted in a later-withdrawn guilty plea." Iowa R. Evid. 5.410(*a*)(4).

Doe argues that the provision prevents the prosecution from using information it obtained in the plea-bargaining process to identify witnesses to subpoena before the grand jury. It amounts, essentially, to a fruit-of-the-poisonous-tree argument. But the language of the rule is not helpful to Doe. It only provides that any statement made in the course of a plea bargain is inadmissible. It is the statements of Parrish to prosecutors that are thus inadmissible, not Railsback's opinion. Indeed, this would be consistent with our caselaw. For example, in *Exotica Botanicals, Inc. v. Terra International, Inc.*, 612 N.W.2d 801, 809 (Iowa 2000), we found that work-product protections were not waived through discussion with opposing counsel. The court stated,

> But to say that [an individual] waived his work product privilege concerning information that might potentially absolve [a client] of liability, simply by discussing the general nature of that information with [an opposing party], would mean that an attorney could never discuss the positive aspects of his or her case with opposing counsel for fear that such discussion would amount to a waiver of the work product privilege as to all documents supporting that position. If this were the case, settlement negotiations and communication between the parties in general would break down. Such a result would be inconsistent with a commonsense application of the work product doctrine and certainly inconsistent with the goal of resolving cases in a timely manner.

*Id.*

But that does not mean that information communicated in plea-bargaining cannot be pursued by the prosecution. For example, in *United States v. Cusack*, 827 F.2d 696, 697–98, 697 nn.1–2 (11th Cir. 1987) (per curiam), the Eleventh Circuit considered a case in which evidence was seized under a search warrant where probable cause for the warrant was supplied by defendant's plea negotiation statements. The governing language in the rule applied in *Cusack*, Federal Rule of Criminal Procedure 11(e)(6)(D), uses language similar to Iowa Rule of Evidence 5.410(*a*)(4). *Compare id.* 697 n.3 (quoting Fed. R. Crim. P. 11(e)(6)(D)), *with* Iowa R. Evid. 5.410(*a*)(4). The *Cusack* court held that the rule did not prohibit derivative use of statements but only the admission of the statements themselves. *Id.* at 697–98; *see also United States v. Ware*, 890 F.2d 1008, 1012 (8th Cir. 1989) (holding that defendants introduction of a potential witness to the government during plea discussions was not within the scope of the rule); *United States v. Rutkowski*, 814 F.2d 594, 598 (11th Cir. 1987) (per curiam) (finding that reexamination of evidence due to statements made in plea-bargaining was permissible); *United States v. Fronk*, 173 F.R.D. 59, 62 (W.D.N.Y. 1997) (stating that evidence derived from statements in the plea-bargain process are admissible).

Yet, in this case, the fact that evidence derivative of statements may be admitted does not save the day for the State. Here, the only way the State can show that Parrish waived the work-product doctrine would be to use his *statement in plea negotiations*. Plea discussions themselves are not admissible. Iowa R. Crim. P. 2.10(5). As a result, the State cannot use the statement made by Parrish to prosecutors to establish the necessary foundation for waiver. Thus, Doe is entitled to press their work-product claim in its entirety.

For the above reason, we conclude that the district court erred in not quashing the grand jury subpoena of Dr. Railsback.

**B. Disqualification Issue.**

1. *Introduction.* Doe seeks the disqualification of counsel because "she directly contacted defense counsel's expert and demanded information about the matter." The district court overruled the motion. No constitutional error was presented to or ruled upon by the district court, and as a result, these claims are not preserved. Our review of a decision related to disqualification of a prosecutor is for abuse of discretion. *Iowa Dist. Ct. for Dubuque Cty.*, 870 N.W.2d at 853.

2. *Positions of the parties.* Doe asserts that under *Iowa District Court for Dubuque County*, a prosecutor may be disqualified for engaging in behavior that amounted to a conflict of interest "or otherwise cause them to seek results that are unjust or adverse to the public interest." *Id.* at 853 (quoting Allan L. Schwartz & Denny R. Veilleux, Annotation, *Disqualification of Prosecuting Attorney in State Criminal Case on Account of Relationship with Accused*, 42 A.L.R.5th 581, 581 (1996) [hereinafter Schwartz & Veilleux]). Doe claims the "unjust or adverse to the public interest" prong is implicated in this case. Doe buttresses the unjust or adverse to the public interest claim with a citation to the ABA Standard 3-

4.6(i) requiring a prosecutor to consider the "applicable law and rules of professional responsibility" before issuing grand jury subpoenas to opposing parties and witnesses. *Criminal Justice Standards for the Prosecution Function*, Am. Bar Ass'n. Combining the *Iowa District Court for Dubuque County* case and the ABA Standards, it appears that Doe is arguing that illegal conduct or violation of the Iowa Rules of Professional Conduct by a prosecuting attorney may give rise to results that are "unjust and adverse to the public interest" and require disqualification. *Iowa Dist. Ct. for Dubuque Cty.*, 870 N.W.2d at 853 (quoting Schwartz & Veilleux, 42 A.L.R.5th at 581).

To establish illegality, Doe points to Iowa Rule of Civil Procedure 1.508(2) as "instructive." Although the rule relates to discovery, Doe argues that it would be meaningless if an attorney were allowed to contact the opponent's expert witness directly. As a result, according to Doe, a no-contact rule prohibiting parties from contacting an opposing expert is ordinarily enforced. *See* George M. Cohen, *Beyond the No-Contact Rule: Ex Parte Contact by Lawyers with Nonclients*, 87 Tul. L. Rev. 1197, 1209–10 (2013) [hereinafter Cohen].

Doe specifically cites *Erickson v. Newmar Corp.*, 87 F.3d 298, 301–02 (9th Cir. 1996). In *Erickson*, the Ninth Circuit considered a situation where an attorney had hired a pro se plaintiff's expert on another case, thus gaining access to the opposing party's expert. *Id.* at 300. The Ninth Circuit observed that there was a scarcity of caselaw on the topic, "possibly because the violation seldom happens." *Id.* at 302. The Ninth Circuit cited an ethics treatise and two ethics opinions standing for the proposition that such conduct was "impliedly prohibited" by the existing rules of civil procedure and ethics rules. *Id.* at 301–02 (citing 2 Geoffrey C. Hazard & W. William Hodes, *The Law of Lawyering* § 3.4:402 (2d ed. Supp. 1994);

ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 93–378 (1993); Or. St. Bar Ass'n, Formal Op. 1992–132 (1992)). The Ninth Circuit reversed the district court's judgment in favor of the defendant and instructed the district court to impose appropriate sanctions and disciplinary action upon defense counsel. *Id.* at 304.

The State contends that *Iowa District Court for Dubuque County* does not permit such a free-standing basis for disqualification and that Doe must *prove a conflict of interest* which either (a) "prejudiced [the prosecutor] against the accused," or (b) "cause[d] them to seek results that are unjust or adverse to the public interest." 870 N.W.2d at 853 (quoting Schwartz & Veilleux, 42 A.L.R.5th at 581). The State does not directly address, however, the issue of ex parte contact with a retained expert of an opposing party. In any event, even if the district court could disqualify the prosecutor on that basis, it properly exercised its discretion in declining to do so.

3. *Discussion.* Under *Iowa District Court for Dubuque County*, a prosecutor may be disqualified by a district court if "they have a conflict of interest which might prejudice them against the accused or otherwise cause them to seek results that are unjust or adverse to the public interest." *Id.* (quoting Schwartz & Veilleux, 42 A.L.R.5th at 581). Doe takes the position that this anguage permits disqualification of a prosecutor solely on a finding that they sought results which are "unjust or adverse to the public interest." *Id.*

When read as a whole, however, it is clear that under *Iowa District Court for Dubuque County*, there must first be a prerequisite showing of alleged conflict of interest, followed by either a showing of prejudice against the defendant or unjust results. *Id.* Indeed, to permit disqualification solely on the basis that the prosecutor sought results which are unjust or

contrary to the public interest would make such determination conditioned on a judge's subjective interpretation of the meaning of "unjust" or "adverse to the public interest." Depending on the specific allegations, this may also intrude on the prosecutor's freedom from judicial oversight when bringing claims. *See Iowa Dist. Ct. for Johnson Cty.*, 568 N.W.2d at 508. Doe has not sufficiently alleged a conflict of interest, thus disqualification under *Iowa District Court for Dubuque County* is not warranted. *See* 870 N.W.2d at 849.

The State further argued that a showing of prejudice should be required prior to disqualification based on a prosecutor seeking results that are unjust and contrary to public policy. Since we have declined to adopt disqualification on this basis, we also decline to address this issue further.

In support of his contention, Doe relies on the ABA Standards. In particular, Doe relies on standard 3-4.6(i), which cautions prosecutors against issuing "a grand jury subpoena to a criminal defense attorney or defense team member, or other witness whose testimony reasonably might be protected by a recognized privilege, without considering the applicable law and rules of professional responsibility in the jurisdiction." *Criminal Justice Standards for the Prosecution Function*, Am. Bar Ass'n. Violations of ABA Standards have previously been considered by this court in disqualification determinations. *See Iowa Dist. Ct. for Dubuque County*, 870 N.W.2d at 856 ("Although [the ABA Standards] are 'not intended to be used as criteria for . . . judicial evaluation,' the standards still 'may or may not be relevant in such judicial evaluation, depending upon all the circumstances.' " (quoting ABA Standards for Criminal Justice: Prosecution Function and Defense Function 3-1.1, at 3 (3d ed. 1993)); *Blanton v. Barrick*, 258 N.W.2d 306, 311 (Iowa 1977) (holding that,

although violation of the statute governing disqualification of county attorneys may also violate the ABA Standards, it did not warrant complete abrogation of judicial immunity).

Doe further suggests that Timmins violated a no-contact rule which would prohibit counsel from engaging in ex parte communications with an expert retained by an opposing party. In support, Doe relies on Iowa Rule of Civil Procedure 1.508(2) and its specific explication concerning discovery of a nontestifying expert. The purposes of the no-contact rule include preventing the circumvention of the court's carefully prescribed rules concerning discovery of experts and preventing the inadvertent disclosure of privileged or confidential information. Cohen, 87 Tul. L. Rev. at 1210–11.

Further the ABA has issued a formal ethics opinion on the subject, which states,

> [Model] Rule 3.4(c) requires a lawyer to conform to the rules of a tribunal before which a particular matter is pending, and it is under this Rule that the matter of expert witnesses comes into particular focus. The rules of procedure of many tribunals contain specific and exclusive procedures for obtaining the opinions, and the bases therefor, of the experts who may testify for the opposing party. The leading rule in this regard is Fed.R.Civ.P.Rule 26(b)(4)(A), which sets forth a two-step process that must be followed in order to obtain discovery of facts and opinions held by an adversary's expert who is expected to testify at trial: first, written interrogatories are to be served; second, if additional discovery is desired, leave of court must be obtained.
>
> . . . .
>
> The Committee therefore concludes that, although the Model Rules do not specifically prohibit a lawyer in a civil matter from making ex parte contact with the opposing party's expert witness, such contacts would probably constitute a violation of Rule 3.4(c) if the matter is pending in federal court or in a jurisdiction that has adopted an expert-discovery rule patterned after Federal Rule 26(b)(4)(A). Conversely, if the matter is not pending in such a jurisdiction, there would be no violation.

ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 93–378, at 2–3. A number of cases have held similarly. *See, e.g., Young v. S. Cal. Transp., Inc.*, No. 2:08cv247KS-MTP, 2010 WL 916665, at *12 (S.D. Miss. Mar. 10, 2010) ("[Federal Rule of Civil Procedure 26(b)(4)(B)] makes no provision for *ex parte* communication with a party's expert witness by the opposing party."); *Carlson v. Monaco Coach Corp.*, No. CIV-S-05-0181 LKK/GGH, 2006 WL 1716400, at *10 (E.D. Cal. Apr. 20, 2006) ("[T]he careful scheduling of experts' disclosures and discovery by the district court would be for naught if the parties could back door these provisions with informal contacts of an adversary's experts."); *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998) ("By implication, *ex parte* contacts with expert witnesses, in order to discover their opinions, are prohibited.").

In examining these authorities, one obvious commonality emerges: they do not involve grand jury proceedings. There are no current rules relating to grand jury proceedings. In fact, at least one other jurisdiction has found that contacting expert witnesses within the context of a criminal case is permissible.[1]

The issue before us is whether the district court abused its discretion in declining to disqualify Timmins because of her brief phone call with Dr. Railsback and her subpoena of Railsback to appear before the grand jury. As a reviewing court, we only consider whether the district court abused its discretion in declining to disqualify Timmins. As to the

---

[1]In Formal Opinion No. 2005-131, the Oregon board of governors adopted a framework allowing for contacting adverse expert witnesses within the context of a criminal proceeding. Or. St. Bar Ass'n, Formal Op. 2005–131 (2005). This opinion, although informative, is distinguishable from the case at hand as it does not make a clear enough distinction between testifying and nontestifying witnesses for our purpose, is based in part on Oregon caselaw which has grown around the discovery process, and deals with ordinary criminal proceedings rather than our present grand jury context.

phone call, it may have been a mistake, and even improper, to ask Railsback to state her opinions ex parte, but it does not arise to such egregious misconduct in this unclear area of law to allow us to say that the district court abused its discretion in failing to disqualify Timmins. As to the issuance of the subpoena, it may have crossed the line, as we have now drawn it, but it does not amount to the kind of misconduct that requires, as a matter of law, the disqualification of Timmins.

**C. Authority of a District Court to Generally Quash Grand Juries.**

1. *Introduction.* Doe seeks to generally quash the grand jury. He does not simply seek to quash a grand jury indictment. *See, e.g., State v. Boucher*, 237 Iowa 772, 774, 23 N.W.2d 851, 852 (1946). Nor does Doe seek to quash a grand jury subpoena pursuant to Iowa Rules of Civil Procedure 1.1701 and 1.1702. Instead, Doe wants to terminate the grand jury proceeding *in toto.*

2. *Positions of the Parties.* Doe recognizes the unusual posture of the grand jury in our institutional design. Doe notes that a grand jury "is not an adjunct of either the court or the prosecutor." *Iowa Dist. Ct. for Johnson Cty.*, 568 N.W.2d at 508. Doe notes we have held that a district court cannot use the grand jury as a sword to coax the county attorney to bring a charge they would not otherwise pursue. *Id.* at 509. But, Doe distinguishes judicial intervention to use the grand jury as a prosecutorial sword with judicial oversight of the grand jury as a shield against prosecutorial misconduct. In support, Doe observes that in *State v. Paulsen*, 286 N.W.2d 157, 159–61 (Iowa 1979) (en banc), that we considered but rejected on the merits a due process claim that a prosecutor "improperly influenced" the grand jury. *See also Hall*, 235 N.W.2d at 712.

Operating from the premise that the judicial branch has authority to ensure the constitutionality of grand jury proceedings, Doe proceeds to assert that prosecutors violated Doe's constitutional rights by using the grand jury proceeding as a preindictment discovery tool. Doe attacks the State for using the subpoena power of the grand jury to call Doe, Doe's family members, Doe's coworkers, and Doe's retained expert as a tactic that "subverts the purpose of the grand jury proceeding[,]" which is to determine if there is an adequate basis for bringing a charge. *See Williams*, 504 U.S. at 51, 112 S. Ct. at 1744 (finding that "the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge"). Doe asserts without elaboration that the State's claim that it sought to present "a complete picture" to the grand jury violated article I, sections 9, 10, and 11 of the Iowa Constitution.

Doe relies heavily here on *Wong* as instructive. In *Wong*, the circuit court found misconduct when prosecutors subpoenaed witnesses for a grand jury that would likely provide privileged attorney–client testimony, but did not first seek a court ruling regarding the extent to which those witnesses could testify. 40 P.3d at 917. The *Wong* court ultimately affirmed dismissal of the indictments for prosecutorial misconduct. *Id.* at 930.

The State vigorously responds. It notes that the Iowa Rules of Criminal Procedure provide authority to challenge a panel or an individual grand juror, or to dismiss indictments, but not challenge to the entire proceeding. *See* Iowa R. Crim. P. 2.3(2)(*c*); *id.* r. 2.11(6)(*a*)–(*b*). The State notes, for example, that in *Wong* the district court dismissed indictments, but did not quash a grand jury proceeding in whole.

Even if the court had the power to "quash the grand jury," the State asserts that this is not the case to do it. While Doe complains about the State's subpoenas for defense witnesses, the rules specifically state that "[t]he grand jury is not bound to hear evidence for the defendant, but may do so." Iowa R. Crim. P. 2.3(4)(*g*). The State further cites ABA Standards 3-4.6(i), suggesting prosecutors may have an ethical obligation to present evidence from the defendant. Further, the State cites the difficulty in determining whether evidence is helpful or harmful to the prosecution or defendant. Finally, the State notes that the grand jury has investigative purposes which would be defeated by enforcement of a rule that only inculpatory evidence may be presented. *See Paulsen*, 286 N.W.2d at 160. The State claims that it was not engaged in discovery, but was instead seeking to present the grand jury with evidence to make a judgment about the case.

Finally, the State notes the procedural posture of this case. In fact, the district court held a hearing prior to any presentation of testimony before the grand jury. The situation is thus materially different than in *Wong*, where the State was ordered not to present testimony from attorneys without first seeking a judicial determination but defied the order and presented the evidence anyway. *Wong*, 40 P.3d at 925.

3. *Discussion.* We begin with a brief review of the status of the grand jury and its relationship to the judicial branch. As a general proposition,

> [g]iven the grand jury's role as an independent body, however, the district court's supervisory power is "a very limited one." It does not "permit judicial reshaping of the grand jury institution." Rather, it may be used only to "preserve or enhance the traditional functioning" of the grand jury. For example, a district court does not have the power to order a prosecutor to present exculpatory evidence to a grand jury. Such an order would be inappropriate because, rather than "enhancing the traditional functioning" of a grand jury, it would "alter the grand jury's historical role."

*Carlson v. United States*, 837 F.3d 753, 762 (7th Cir. 2016) (quoting *Williams*, 504 U.S. at 50–51, 112 S. Ct. at 1735). If the district court does not have authority to order that exculpatory evidence be presented, it seems logical that it may not have authority to order that exculpatory evidence be excluded.

We further note that the Iowa Rules of Criminal Procedure establish several potential judicial remedies, but do not authorize quashing of a grand jury. We do not find that oversight inadvertent. The exercise of judicial branch powers should generally remain within the established guardrails. Even if there were constitutional problems or other errors associated with a grand jury proceeding, the remedy lies not in seeking to disband the grand jury, a constitutionally established entity, but in dismissal of the indictment.

**D. Timeline for Challenges to Grand Jury Arrays Under *Plain*.**

1. *Introduction.* The final issue before the court in this case pertains to when a defendant may make a fair-cross-section *Plain* challenge within a grand jury context. *See Plain*, 898 N.W.2d 801. The parties do not dispute that Doe is entitled to raise a *Plain* challenge to the composition of the grand jury. They battle over whether Doe raised a timely *Plain* challenge and whether the district court erred in swearing a grand jury and deferring resolution of Doe's *Plain* challenge.

The relevant rule is Iowa Rule of Criminal Procedure 2.3(2)(*a*). This rule provides,

> *Challenge to array.* A defendant held to answer for a public offense may, before the grand jury is sworn, challenge the panel or the grand jury, only for the reason that it was not composed or drawn as prescribed by law. If the challenge be sustained, the court shall thereupon proceed to take remedial action to compose a proper grand jury panel or grand jury.

*Id.*

2. *Positions of the parties.* Doe relies upon the plain language of Iowa Rule of Criminal Procedure 2.3(2), interpreting the rule to mean that a *Plain* challenge must be made prior to the convening of a grand jury. Doe claims that he needed additional time to gather the necessary information to support the challenge, hence the motion for continuance. Doe also states that a balancing of equities between judicial efficiency and prejudice would necessarily favor him. Finally, Doe asserts that mere preservation of the issue by the court for a later decision is an inadequate remedy.

The State counters that Doe did not make a timely *Plain* challenge, and instead only sought a continuance to determine if he could make a *Plain* challenge. That, according to the State, is not good enough under Iowa Rule of Criminal Procedure 2.3(2)(*a*). In any event, the State maintains that nothing in rule 2.3(2) requires that a *Plain* challenge be decided prior to the swearing of a grand jury. While the State notes the district court is required to take remedial action if a *Plain* challenge is founded, that does not require remedial action before the grand jury is sworn. Indeed, the State points out, there is nothing in the rule that establishes a timetable for a judicial ruling on the issue.

According to the State, the district court's handling of the matter was appropriate for reasons of efficiency. The citizens comprising the array had arrived at the courthouse, and witnesses were subpoenaed and scheduled to testify. According to the State, the makeup of the grand jury should be presumed constitutional so there was no basis for delay. If Doe developed a successful *Plain* challenge, the indictment against him could then be dismissed.

3. *Discussion.* As a preliminary issue, the State claims that Doe did not raise a *Plain* challenge but only filed a motion to continue to allow him

to challenge the composition of the jury. The motion includes the label "Motion to Challenge Grand Jury," but in the text it seeks to continue the grand jury in order to challenge the composition of the grand jury. This pleading is hardly a model of clarity. The district court denied the motion to continue but held that the *Plain* claim could be raised at a later date.

Iowa Rule of Criminal Procedure 2.3(2)(*a*) states that a defendant "may" raise what is now called a *Plain*-type challenge before the grand jury is sworn. It is not clear that "may" means "must." In any event, we think the filing of the document entitled "Motion to Challenge Grand Jury" with text seeking a continuance to gather information to support a potential challenge is sufficient compliance to satisfy the rule, even if it is mandatory in nature. The parties and the district court were on adequate notice of the potential *Plain* challenge prior to the swearing of the grand jury.

We now move to the major issue, namely, whether the rule requires not only that a challenge be filed prior to the swearing of the grand jury but also whether the matter must be *decided* before the grand jury is sworn. The rule does not say that. It does say that if the challenge is sustained, the court shall take appropriate action to compose a proper grand jury panel or proceeding, but that can occur after a grand jury is sworn.

Doe makes a fair point that by allowing the grand jury proceedings to continue, the proceedings may ultimately be for naught if he prevails on his *Plain* claim. But he is not harmed by the grand jury receiving testimony. He is harmed by grand jury action. The district court and the parties should expeditiously resolve the issue, but allowing the grand jury to sit and receive previously scheduled testimony while the *Plain* challenge is developed by the parties is not a substantial injustice.

**IV. Conclusion.**

For the above reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

All justices concur except McDonald, J., who concurs in part and dissents in part.

#18–1534, *In re 2018 Grand Jury of Dallas Cty.*

**McDONALD, Justice (concurring in part and dissenting in part).**

I respectfully concur in part and dissent in part. I concur in all parts of the majority opinion except its reversal of the district court's ruling on the motion to quash the grand jury subpoena. On that issue, I respectfully dissent.

This court reviews the district court's ruling on a motion to quash a subpoena for an abuse of discretion. *See Morris v. Morris*, 383 N.W.2d 527, 529 (Iowa 1986) (applying an abuse of discretion standard); *Mason v. Robinson*, 340 N.W.2d 236, 243 (Iowa 1983) (stating "we conclude our trial courts have wide discretion to quash subpoenas or issue protective orders"). "Reversal is warranted only if the grounds relied on by the district court are clearly unreasonable or untenable." *Pattison Bros. Miss. River Terminal, Inc. v. Iowa Dist. Ct.*, 630 N.W.2d 782, 787 (Iowa 2001). This court's mere disagreement with the district court's discretionary ruling is not enough to warrant reversal under this standard. This court is not to substitute its collective judgment for that of the district court. Instead, under an abuse of discretion standard, this court must affirm the district court's discretionary ruling absent a firm and definite conviction the ruling is "beyond the pale of reasonable justification under the circumstances" presented—a decision so flawed and prejudicial to the administration of justice that this court must provide relief. *See Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000).

> The grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . .

*United States v. Mandujano*, 425 U.S. 564, 571, 96 S. Ct. 1768, 1774 (1976). The grand jury functions as both a sword and a shield. *See* Admin. Office of U.S. Cts., *Handbook for Federal Grand Jurors* 4 (Rev. Apr. 2012), www.uscourts.gov/sites/default/files/grand-handbook.pdf ("[T]he grand jury operates both as a 'sword,' authorizing the government's prosecution of suspected criminals, and also as a 'shield,' protecting citizens from unwarranted or inappropriate prosecutions."). Its purpose is both to investigate criminal conduct and to protect citizens against unfounded criminal charges. *See Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S. Ct. 2646, 2659 (1972). The grand jury's authority, particularly its investigative authority, is broad. *See United States v. Calandra*, 414 U.S. 338, 344, 94 S. Ct. 613, 618 (1974) ("The grand jury's investigative power must be broad if its public responsibility is adequately to be discharged."). Indispensable to the grand jury is the authority to compel the attendance and testimony of witnesses and to require the production of evidence. *See Kastigar v. United States*, 406 U.S. 441, 443, 92 S. Ct. 1653, 1655 (1972); *see generally United States v. White*, 322 U.S. 694, 64 S. Ct. 1248 (1944). The grand jury's authority to compel witness testimony and require the production of evidence rests on the well-established principle that "the public . . . has a right to every man's evidence." *Branzburg*, 408 U.S. at 688, 92 S. Ct. at 2660 (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S. Ct. 724, 730 (1950)). "When called by the grand jury, witnesses are thus legally bound to give testimony." *Mandujano*, 425 U.S. at 572, 96 S. Ct. at 1774.

Of course, the grand jury's authority to obtain every man's evidence is subject to statutory and common law privileges. *See* 3 Wayne R. LaFave et al., *Criminal Procedure* § 8.6(b), at 156 (4th ed. 2015). I thus agree with the majority opinion that the work-product protection can be asserted in

grand jury proceedings. *See, e.g.*, *In re Grand Jury Proceedings, G.S. & F.S.*, 609 F.3d 909, 912 (8th Cir. 2010) ("Ordinarily, attorney-client communications and attorney work product are not discoverable, even in a grand jury investigation."); *In re Green Grand Jury Proceedings*, 492 F.3d 976, 979 (8th Cir. 2007) ("Attorney-client communications and attorney work product are privileged and are not ordinarily discoverable—even by the grand jury.").

Although I agree the work-product protection can be asserted in grand jury proceedings, I disagree with the majority opinion's apparent conclusion that a target or witness's assertion of the work-product protection requires that a grand jury subpoena be quashed. The application and scope of the work-product doctrine is nuanced and fact-specific. Nowhere is this truer than in a grand jury investigation. In the context of a grand jury investigation, the protection afforded work product is to some extent unsettled and may be different than in other contexts. *See, e.g.*, *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184–85 (2d Cir. 2007) ("It is clear that the work product doctrine applies to grand jury proceedings, but arguably less clear what species of work product protection a court should apply."); *In re Green Grand Jury Proceedings*, 492 F.3d at 981 (drawing a distinction between the discoverability of opinion work product and ordinary work product in grand jury proceedings); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 142 (D. Mass. 2004) ("The work product doctrine's 'scope and effect outside the civil discovery context is largely undefined,' however, and its application in cases involving grand jury subpoenas is particularly unsettled." (quoting *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1013 (1st Cir. 1988))). "This is partly because of the unique significance of the grand jury in our system of government: 'Nowhere is the public's claim to

each person's evidence stronger than in the context of a valid grand jury subpoena.'" *In re Grand Jury Subpoena*, 220 F.R.D. at 142 (quoting *In re Sealed Case*, 676 F.2d 793, 806 (D.C. Cir. 1982)). The grand jury is sui generis. "[I]t belongs to no branch of the institutional [G]overnment . . . ." *State v. Iowa Dist. Ct.*, 568 N.W.2d 505, 508 (Iowa 1997) (quoting *United States v. Williams*, 504 U.S. 36, 47, 112 S. Ct. 1735, 1742 (1992)). It is a "grand inquest" whose investigations are "not to be limited narrowly by questions of propriety." *Calandra*, 414 U.S. at 343, 94 S. Ct. at 617 (quoting *Blair v. United States*, 250 U.S. 273, 282, 39 S. Ct. 468, 471 (1919)).

Given the nuanced and fact-specific inquiry required to resolve an assertion of work-product protection in response to a grand jury subpoena, I cannot conclude the district court's discretionary ruling to deny the motion to quash was beyond the pale of reasonable justification under the circumstances presented. Indeed, it seems to me the district court's ruling might be preferable to the majority's resolution of the issue. Denying the motion to quash and allowing the grand jury to continue its inquest while at the same time allowing the witness to assert the privilege in response to specific questions would allow for the development of a better record to determine whether the question posed to the witness actually sought information protected by the work-product doctrine, whether the witness had standing to assert the work-product doctrine as a ground for refusing to answer the question, and whether the information was nonetheless discoverable notwithstanding the assertion of work-product protection. This more nuanced approach has been adopted by other courts in response to a grand jury witness's assertion of a privilege. *See, e.g.*, *Mandujano*, 425 U.S. at 575, 96 S. Ct. at 1776 ("The stage is therefore set when the question is asked. If the witness interposes his

privilege, the grand jury has two choices. If the desired testimony is of marginal value, the grand jury can pursue other avenues of inquiry; if the testimony is thought sufficiently important, the grand jury can seek a judicial determination as to the bona fides of the witness' Fifth Amendment claim . . . ."); *In re Grand Jury Subpoena*, 831 F.2d 225, 227, 228 (11th Cir. 1987) (holding "an attorney seeking to quash a subpoena must assert the attorney-client privilege on a document-by-document basis" and reversing district court order quashing grand jury subpoena); *In re Grand Jury Investigation*, 431 F. Supp. 2d 584, 592 (E.D. Va. 2006) ("In the present circumstances, however, Roe's motion fails; the assertion of the [marital] privilege is premature and cannot, in this case, serve as a basis to quash the subpoena. Rather, John Doe must appear and testify, but may assert the privilege in response to specific questions."); *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 322, 334 (S.D.N.Y. 2003) (protecting attorney–client privilege and work product on a question-by-question and document-by-document basis "between and among a prospective defendant in a criminal case, her lawyers, and a public relations firm hired by the lawyers to aid in avoiding an indictment"); *In re Grand Jury Matter*, 147 F.R.D. 82, 87 (E.D. Pa. 1992) (holding expert consultant retained by target's law firm could not withhold certain documents claimed to be protected by the work-product doctrine); *Losavio v. Dist. Ct.*, 533 P.2d 32, 36 (Colo. 1975) (en banc) ("[A]n attorney-witness must, except in the most exceptional of circumstances, honor a properly issued subpoena by appearing before the grand jury. It is then for the trial court to determine whether a specific interrogatory posed by the grand jury or the district attorney calls for an answer which falls within or without the privilege . . . ."); *In re Grand Jury Subpoenas Duces Tecum*, 574 A.2d 449, 457 (N.J. Super. Ct. App. Div. 1989) ("[I]n contrast to a

subpoena *duces tecum,* a blanket motion to quash a subpoena *ad testificandum* is extremely inadvisable. Instead, the attorney should be called upon to appear and assert the attorney-client privilege after hearing the question or questions addressed to him." (Citation omitted.)); *Beach v. Shanley,* 465 N.E.2d 304, 307 (N.Y. 1984) ("To the extent that a subpoena seeks testimony, the assertion that the contemplated testimony is subject to a privilege will not usually justify quashing the subpoena. In that event, litigation must await such time as when the witness refuses to answer the question on the ground that privileged information is concerned and an attempt is made to compel a response." (Citations omitted.)); *Movants to Quash Grand Jury Subpoenas v. Powers,* 839 P.2d 655, 657 (Okla. 1992) ("We hold that assuming, but without deciding, that while such a First Amendment privilege may come into existence under particular facts, it does not authorize the quashing of these grand jury subpoenas. The presiding judge of the grand jury has the power to rule on any claimed privilege on which the petitioners desire to rely when the privilege is invoked.").

Given the substantial authority supporting the action of the district court, I cannot conclude the district court's ruling on the motion to quash was beyond the pale of reasonable justification under the circumstances presented so long as the witness is allowed to invoke the work-product protection in response to specific questions. With this understanding, I would thus affirm the ruling of the district court in all respects.